# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

RONNIE V. WILLIAMS
AIS # 239426,                                    :

     **Plaintiff,**                           :

**vs.**                                          :       **CIVIL ACTION 11-0178-CB-C**

WARDEN ROBERT NIELSEN, *et al.,*                 :

     **Defendants.**                          :

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis* filed a Complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on the motion for summary judgment of Defendants, Robert Nielsen, James P. Dodds, Ms. Hitson, J. Baker (docs. 46,47) and Plaintiff's opposition thereto (doc. 54). For the reasons stated below, it is recommended that the motion for summary judgment of Defendants be granted and that Plaintiff's action against Defendants be dismissed with prejudice.

## I. SUMMARY OF FACTUAL ALLEGATIONS

From its review of the record, the Court summarizes the parties' allegations which are material to the issues addressed in this Report and Recommendation.[1] This action arises from incidents occurring at Camden Work Release Facility ("Camden"). (Doc. 1 at 4).

---

[1] The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *Priester v. City of Riviera Beach, Fla,* 208 F.3d 919, 925 n.3 (11th Cir. 2000)(citations and internal quotation marks omitted). Nevertheless, for summary judgment purposes, the Court's analysis begins with a description of the facts in the light most favorable to the nonmoving party. *See McCullough v. Antolini,* 559 F.3d 1201, 1202 (11th Cir. 2009).

Plaintiff arrived at Camden on May 13, 2008. (Doc. 53 at 49). He became aware that funds from his prison account were not being sent to the court upon receipt to cover the fee for a lawsuit he filed;[2] he contacted the court and was informed that he could file a complaint against the prison if the facility was not following the *in forma pauperis* order. (Doc. 1 at 9). On June 27, 2008, Plaintiff had a meeting with Defendant Warden Nielsen, Lieutenant Sellers, and Sergeant Allen regarding the distribution of funds issue. (Doc. 1 at 9; Doc. 54 at 5). At the meeting Defendant Warden Nielsen stated to Plaintiff that he had "no reason to steal [Plaintiff's] money." (Doc. 1 at 9). When Plaintiff responded, "I never said you did," Lieutenant Sellers said it appeared Plaintiff "was attempting to place them in fear by contacting the courts." (Doc. 54 at 5). Sergeant Allen then suggested the solution was to have the funds disbursed to the court once a month, instead of each time money was deposited into the account, and Plaintiff agreed. (*Id.*). Plaintiff was told by Lieutenant Sellers to never return to the Warden's office again and that if he had a problem to take it to Sergeant Allen, who, like Plaintiff, is a black male. (*Id.*). Plaintiff viewed these comments as a racial remarks and wrote Alabama Department of Corrections Assistant Commissioner DeLoach ("A.C. DeLoach") and Judge Charles Graddick, Plaintiff's sentencing judge, regarding racial partiality at Camden.[3] (*Id.*).

---

[2]     Plaintiff filed a §1983 action in the United States District Court for the Middle District of Alabama in 2007 against the Alabama Department of Correction's health care provider. (Doc. 1 at 3; Doc. 54 at 5). Twenty percent of the money in Plaintiff's account was to be sent to the court to fund the filed action. (*Id.* at 9). Plaintiff was disturbed that monies were not disbursed to the court each time a deposit was made in his account, but the business manager at Camden told him it was unnecessary to send the funds after every deposit because court cases do not move that quickly. (*Id.* at 9). Defendant Warden Nielsen, however, avers that Camden Work Release Facility was not sending funds from Plaintiff's account to the court because it was never in receipt of a court order directing disbursement. (Doc. 46-1 at 2).

[3]     Plaintiff claims that black inmates at Camden are referred to as "you people" and are treated differently than white inmates. (Doc. 1 at 9). Specifically, Plaintiff states that "blacks are singled out, and harassed, [and] also receive disciplinary infractions for incidents as opposed to white inmates." (*Id.*). However, Defendant Warden Nielsen denies ever making racial

Plaintiff began initiating written requests for a transfer from Camden to another work release facility on July 29, 2008. (Doc. 53 at 47-48). He specified that his family was located in Mobile, Alabama, and due to the age and sickness of his mother and financial difficulties, his family was unable to visit him in prison, and, therefore, he requested he be transferred to a facility closer to his family. (*Id*.). Defendant Warden Nielsen informed Plaintiff that lateral transfers were not considered until an inmate had served six months time without any disciplinary infractions. (*Id*.). Plaintiff subsequently wrote at least six more transfer requests between August 2008 and March 2009, including letters to Judge Graddick and A.C. DeLoach.[4] (Doc. 53 at 26-29, 50; Doc. 54 at 5-6, 51, 54).

On April 9, 2009, Plaintiff spoke with Officer Thompson about a job transfer. (*Id*. at 10). Plaintiff was working two days a week at the Alabama State Troopers' office but desired to work more hours. (*Id*.). Officer Thompson informed Plaintiff he would need to speak to Sergeant Dodds regarding any transfer request. (*Id*.). Plaintiff met with Defendant Sergeant Dodds that evening and a confrontation ensued that led to Plaintiff being written up for making threats to harm an inmate or officer. (Doc. 1 at 10). Defendant Sergeant Dodds avers that Plaintiff informed Officer Thompson, earlier that evening, that he would "put [his] hands on someone, then [he'd] get [his] transfer" and that Plaintiff admitted to making this statement when questioned by Defendant Sergeant Dodds. (Doc. 46-2 at 7). Defendant Sergeant Dodds then

---

comments. (Doc. 46-1 at 2).

[4]     In hopes of receiving a transfer, Plaintiff met with Defendant Warden Nielsen and classification specialist, Ms. Green, on August 27, 2008, and stated he wanted a transfer due to "safety issues," not familial difficulties as previously stated. (Doc. 54 at 5-6). Plaintiff's last attempt to request a transfer was a letter written to Captain Sellers in March 2009, after serving 10 months at Camden. He stated, he had served over six months with no disciplinary infractions and that "[t]his facility has nothing here but problems and nothing to offer [him]," and he noted that he had "taken every proper step to be removed from [the] facility." (Doc. 54 at 54).

pointed his finger at Plaintiff "and stated sternly to Inmate Williams that Inmate Williams would not put Inmate Williams['] hands on any staff or Inmate at Camden CBF." (*Id*.). Plaintiff tried to speak over Defendant Sergeant Dodds numerous times and was instructed to remain silent and to unclench his fist. (*Id*.). When Plaintiff departed from the meeting, he was "mumbling incoherently" and Defendant Sergeant Dodds' walked into the hallway to Plaintiff, instructed Plaintiff to be silent, and ordered him not to put his hands on anyone at Camden. (*Id*. at 7-8). Shortly thereafter, Defendant Sergeant Dodds searched Plaintiff's bed rack for contraband but found no weapons or other contraband. (*Id*. at 8). Plaintiff, however, states that during this meeting with Defendant Sergeant Dodds, Dodds was banging his fists on the desks, yelling at Plaintiff to be silent, and head-butted Plaintiff. (Doc. 1 at 5, 10; Doc. 54 at 6). Plaintiff, also, states that during the shakedown Defendant Sergeant Dodds destroyed some of his legal papers. (Doc. 1 at 10).

On April 10, 2009, Plaintiff was served with a disciplinary report for making threats to harm. (Doc. 46-2 at 99). Upon receipt of the report, Plaintiff was allowed to give the names of witnesses that he wanted to call. (*Id*.). Defendant Sergeant Dodds informed Plaintiff that typically only three witnesses were allowed to be called per Administrative Regulation Number 403. (*Id*.). Plaintiff proceeded to give the names of three witnesses: A. C. DeLoach, Judge Graddick, and Attorney Ronnie L. Williams. (*Id*.; Doc. 46-2 at 12-13). After service of the disciplinary report, Plaintiff made a written request to have Officer Thompson added as a witness. (Doc. 53 at 3, 58). The disciplinary hearing was held the next day, April 11, 2009, and Plaintiff admitted to saying, "I'll put my hands on somebody then I'll get my transfer," but he claims he was trying to repeat the words of Defendant Warden Nielsen, who told him he could get a transfer if he "struck someone in the head." (Doc. 46-2 at 14). He also stated that

Defendant Sergeant Dodds "touched" his face and heel during their meeting. (Doc. 46-2 at 19). Plaintiff was found guilty of the disciplinary charge of making threats, and Defendant Sergeant Dodds informed Plaintiff that he would receive further disciplinary write-ups for the false statements he made during the hearing. (Doc. 46-2 at 10).

Following the hearing, on April 12, 2009, Plaintiff was placed in segregation (*id*. at 18) while subsequent charges were brought against him for conduct that occurred during the April 11, 2009, hearing for making threats. (Doc. 46-2 at 22, 27, 31, 35). Plaintiff was charged for insubordination, for balling up his fists and stepping towards Defendant Sergeant Dodds in a threatening manner, after Dodds informed Plaintiff that he intended to charge Plaintiff for making the following false statements during the hearing (doc. 46-2 at 32): 1) that Defendant Sergeant Dodds physically touched Plaintiff in the face and heels, 2) that he was not allowed to list Officer Thompson as a witness at the hearing, and 3) that Defendant Warden Nielsen and classification officer Ms. Greene advised him to physically strike another inmate about the head in order to receive a transfer. (*Id*. at 19, 23, 28). Plaintiff was served with disciplinary reports for these infractions on April 15, 2009. (Doc. 46-2 at 19, 23, 28, 32). A hearing was held for each of the charges on April 16, 2009, and Plaintiff was found guilty of each charge. (*Id*. at 21, 26, 30, 34).

Following the disciplinary hearings, Plaintiff was reclassified and transferred from Camden work release to Staton Correctional Facility ("Staton"), a medium security prison. (Doc. 53 at 86). While at Staton, on April 22, 2010, Plaintiff states his legal mail was delayed from being sent by Defendant Ms. Hitson for 18 days and that Defendant Mr. Baker withheld

correspondence that should have been posted on February 2, 2011.[5]  (Doc. 21 at 5).  Plaintiff was subsequently transferred to Fountain/J.O. Davis Correctional Facility ("Fountain"), and claims he was denied access to an "active law library" while incarcerated there.  (Doc. 25-1 at 4).   On February 8, 2013, Plaintiff was transferred Mobile County Work Center, and it is there that he is currently housed.  (Doc. 59 at 1).

## II.  PROCEDURAL ASPECTS OF THE CASE

Plaintiff's complaint was filed in this Court on April 11, 2011.  (Doc. 1).   Plaintiff's motion to file an amended complaint was denied twice due to his failure to comply with the Court's orders and file the complaints on the Court's § 1983 form.  (Docs. 17, 19).  Amended complaints, filed on the Court's form, were filed on April 3, 2012 and April 6, 2012.  (Docs. 21, 25, 56, 63).  Defendants were served with the action and answered on October 25, 2012.  (Docs. 46, 47).  The Court converted Defendants' Answer and Special Report to a Motion for Summary Judgment.  (Doc. 49).  While Plaintiff filed a Motion for Default Judgment on November 1, 2012, it was subsequently denied given that it was filed after Defendants' Answer had been received and, furthermore, an entry of default would not have awarded Plaintiff the relief he sought.  (Docs. 50, 61).  The Defendants' motion for summary judgment and Plaintiff's response thereto (doc. 54) are now before the Court.

## III. SUMMARY JUDGMENT STANDARD

---

[5]    Plaintiff declares that from July 2008 through November 2008, while housed at Camden, the legal mail he received from the courts was opened by prison officials before it was given to him.  (Doc. 54 at 5).  Plaintiff states it was not until December 2008 that his legal mail was opened in his presence.  (*Id*.).

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The *Federal Rules of Civil Procedure* grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. *Federal Rule of Civil Procedure* 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), the Supreme Court held that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." However, all of the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-25.

Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *See Stabler v. Fla. Van Lines, Inc.*, No. 11-0103-WS-N, 2012 WL 32660, *5 (S.D. Ala. Jan. 6, 2012) (citing *Clark v. Coats & Clark,*

*Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)).  Summary judgment is proper when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case."  *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (citations and internal quotation marks omitted).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . .  If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986) (internal citations omitted).  "After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  *AGSouth Genetics, LLC v. Cunningham*, No. 09-745-C, 2011 WL 1833016, *2 (S.D. Ala. May 13, 2011).

## IV. DISCUSSION

Plaintiff alleges in his Complaint that Defendants violated his First, Eighth, and Fourteenth Amendment constitutional rights.  (Doc. 54 at 4).  The Court will review each of his claims in turn.

### 1.  Plaintiff failed to carry his burden of proving retaliation.

It is well established that inmates are protected by the First Amendment from retaliation by prison officials for filing lawsuits or administrative grievances.  *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986); *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997).  "To state a first amendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right."  *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989).  Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech," *id*., with a practice that is  "not reasonably related to legitimate penological objectives"

or take certain actions "with the intent of chilling that First Amendment right." *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995), citing *Turner v. Safley*, 482 U.S. 78, 85-89 (1987).

"To state a retaliation claim cognizable under § 1983, a prisoner must demonstrate that (i) he engaged in a constitutionally protected activity, (ii) he suffered adverse treatment simultaneously with or subsequent to such activity, and (iii) a causal connection existed between the protected activity and the adverse action." *Flynn v. Scott*, 2006 WL 1236718, *5 (M.D. Ala. 2006) (citing *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 600-01 (11th Cir. 1986); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003)).

> An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by a preponderance of the evidence, which once established raises a presumption that prison officials retaliated against the inmate. . . . Merely alleging the ultimate fact of retaliation, however, is insufficient. . . . Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to demonstration of a retaliation claim. . . . If an inmate establishes a prima facie case, the burden then shifts to prison officials to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the prison official retaliated against the inmate. This may be done by the prison official articulating a legitimate, non-retaliatory reason for the adverse decision or action, which is clear, reasonably specific and worthy of credence. The prison official has a burden of production, not of persuasion, and thus does not have to persuade a court that he or she actually was motivated by the reason advanced. . . . Once the prison official satisfies this burden of production, the inmate then has the burden of persuading the court by sufficient evidence that the proffered reason for the adverse decision is a pretext for retaliation.

*Flynn*, 2006 WL 1236718 at 5-6 (citations omitted). A prisoner "must allege facts showing that the allegedly retaliatory conduct would not have occurred but for the retaliatory motive." *Hempstead v. Carter*, 2006 WL 2092383, *5-6 (N.D. Fla. 2006) (emphasis added) (citing *Jackson v. Fair*, 846 F.2d 811, 820 (1st Cir. 1988)). "[A] causal connection may be alleged by a chronology of events that create a plausible inference of retaliation. *Id.* (citing *Cain v. Lane*, 857 F.2d 1139, 1143 n. 6 (7th Cir. 1988)). However, "[t]he relevant showing . . . must be more than

the prisoner's 'personal belief that he is the victim of retaliation.'" *Id.* (citing *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997)).  The prisoner must present with more than "general attacks" upon a defendant's motivations and must produce "affirmative evidence" of retaliation from which a jury could find that plaintiff had carried his burden of proving the requisite motive. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (citations omitted).  While a plaintiff may not be held to a heightened burden of proof, *see id* at 580-86 (holding that in retaliation claim prisoner could not be required to show "clear and convincing" evidence of defendant's unconstitutional motives), courts should approach prisoner claims of retaliation "with skepticism and particular care" due to the "near inevitability" that prisoners will take exception with the decisions of prison officials and "the ease with which claims of retaliation may be fabricated." *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled in part on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

Plaintiff claims that Defendants Nielsen and Dodds retaliated against him for accessing the courts by writing disciplinary reports for false incidents and approving said reports.  (*Id.*). The Court finds no causal connection between Plaintiffs redress with the courts and other outside officials and the subsequent disciplinary reports.  Plaintiff first contacted the court regarding his *in forma pauperis* order in June 2008.  Then in July 2008, December 2008, and January 2009, Plaintiff wrote letters to Judge Graddick and A. C. DeLoach.  However, it was not until April 2009, seven months after his correspondence with the court and three months after his last letter to Judge Graddick, that Plaintiff was charged with any disciplinary infractions.  This time span is too broad to assume the disciplinary actions were filed in retaliation for Plaintiff's attempts to correspond with persons outside the prison.  The Court finds that Plaintiff has failed to show any "genuine dispute as to any material fact." *Celotex Corp.*, 477 U.S. at 322.

Additionally, Plaintiff alleges Defendant Dodds assaulted him by head butting him in retaliation for writing to Judge Graddick and Assistant Commissioner DeLoach regarding his desire to transfer from Camden and racial treatment at Camden. (Doc. 54 at 7-8). However, this claim is not supported by the evidence in the record, or even Plaintiff's own facts. Plaintiff provides three different accounts of the alleged "head butting" incident. First, Plaintiff indicates he was head butted three times, twice in the shift office and once in the hallway, by Defendant Dodds. (Doc. 1 at 5). Second, Plaintiff states he was head butted twice in the shift office. (*Id*. at 10). Third, Plaintiff states he was head butted once in the shift office and once in the hallway. (Doc. 54 at 6). The variance of these details is significant; these facts are the basis of Plaintiff's claim, yet they are incredibly inconsistent.[6]

Plaintiff also claims he received the four "retaliatory" disciplinary reports the night of the head butting incident. (Doc. 54 at 6). This allegation, however, is also unsupported by the evidence in the record. The dates of the disciplinary reports and hearings are all documented in the record and do not match Plaintiff's account. In fact, the later disciplinaries only originated after and due to Plaintiff's actions during his first disciplinary hearing on April 11, 2009. The later infractions were all reported based on comments Plaintiff made during his hearing for his first charge. (*See* Docs. 46-2 at 19-34). Furthermore, each of the disciplinary reports and hearings are thoroughly documented, followed prison regulations, and were approved. There is

---

[6] "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also*, *Vicks v. Knight*, 380 Fed. Appx. 847, 851 (11th Cir. 2010) (unpublished) ("A party opposing summary judgment may not rest upon the mere allegations or denials in its pleadings. Rather, its responses, either by affidavits or otherwise . . . must set forth specific facts showing that there is a genuine issue for trial. A mere "scintilla" of evidence supporting the opposing party's position will not suffice.) (quoting *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

no evidence in the record that the charges brought against Plaintiff were manufactured for retaliatory purposes.  In fact, the reports and actions of Defendants seem to serve a penological purpose of preserving safety in a very small and minimally guarded prison.  If anything, it is Plaintiff's story that seems to be fabricated, not Defendants' disciplinary charges, and ever changing throughout his many pleadings.

Due to the disciplinary actions, Plaintiff was reclassified and transferred to Staton, a medium security prison.  (Doc. 53 at 86).  While at Staton he attempted to appeal his reclassification, but it was approved "due to negative behavior (disciplinaries) while at Camden CBF."  (Doc. 53 at 65-66).  The Court, too, consents that Plaintiff was fittingly charged with the four disciplinary infractions and reclassified based on the evidence of the disciplinary hearings,[7] and none of the actions by Defendants Nielsen and Dodds were carried out for retaliatory purposes.

### 2.  Plaintiff failed to carry his burden of proving his § 1985(3) claim.

Plaintiff alleges that Defendants Nielsen and Dodds conspired to hinder and deny him his first amendment right to access the court pursuant to 42 USCS § 1985(3).  (Doc. 54 at 7).  Conspiracy in context of § 1985(3) means that co-conspirators must have agreed, at least tacitly, to commit acts which will deprive plaintiff of equal protection of law.  There are four elements that must be established in order to prove conspiracy: (1) that defendant(s) had agreement with at least one other person and participated or caused something to be done in furtherance of agreement; (2) that agreement was to deprive plaintiff of protected right; (3) that defendant(s) were motivated by dislike or hateful attitude towards specific class of people and that plaintiff

---

[7] Plaintiff claims the disciplinary charges caused his parole denial.  (Doc. 54 at 7).  However, the Court need not examine this claim since no constitutional violation was found regarding the disciplinary charges, hearings, or reclassification.

was member of that class; and (4) that conspiracy caused deprivation or injury to plaintiff. *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986). Moreover, "the language of Section 1985 which requires an intent to deprive one of equal protection or equal privileges and immunities means that there must be some racial or otherwise class-based invidiously discriminatory animus behind the conspirators' action." *Id*. at 1007-08.

Plaintiff claims that black inmates at Camden are treated differently than white inmates. (Doc. 1 at 9). Specifically, Plaintiff states that "blacks are singled out, and harassed, [and] also receive disciplinary infractions for incidents as opposed to white inmates." (*Id*.). Plaintiff details that he once witnessed "a white officer place contraband in the property of a black inmate's property and later come back, find the contraband and write the inmate a disciplinary for the contraband." (Doc. 54 at 5). However, Plaintiff's own explanation of this scenario was that the inmate "was on the wrong side of the administration. [He was] considered a trouble maker." (*Id*.). Plaintiff does not state that the inmate, nor any other inmate, was conspired against based on his race. Even taking as true Plaintiff's witnessed event, "trouble makers" are not a specific class of people afforded equal protection under the law. *Byrd*, 783 F.2d at 1007.

More importantly, the personal claims of Plaintiff in this action are not grounded in racial bias. Plaintiff alleges that his account funds were not being forwarded to the court, but he never states that it was because of his race, or that only black inmates had an issue with having court orders followed by the prison.[8] Plaintiff alleges he was denied transfers to another work facility,

---

[8] The closest to a claim that an act was committed against Plaintiff because of his race is his depiction of this meeting. Plaintiff states he was told to take any future problems to Sergeant Allen. However, this alone does not suffice to prove a § 1985(3) claim. There is no indication this remark by Lieutenant Sellers, who is not a named defendant in this action, was a "class-based" discriminatory action. There is no evidence of black inmates not being able to approach white officers at Camden. In fact, Plaintiff subsequently corresponded with Defendant Warden Nielsen regarding numerous transfer requests. These facts alone do not imply, much less prove,

but he never claims it was because of his race.  There is no claim or evidence presented that black inmates were routinely denied facility transfers or work transfers that other inmates were granted.  There is no actual claim or evidence in the record of ongoing racial bias or mistreatment of a specific class of inmates at Camden.

Plaintiff does allege that while housed in segregation he overheard a conversation between Defendants Nielsen and Dodds where the two discussed being "sick of these niggers" and then a voice, believed to have been Defendant Dodds, stated "I'll take care of him."  (Doc. 1 at 10).  However, when Plaintiff's claim is read in its entirety, the factual allegation looses credibility.  This is due to Plaintiff's facts differing substantially from the evidence in the record.  Plaintiff states he overheard this conversation between the Defendants the night Defendant Dodds head-butted and "thereafter wrote [him] four disciplinaries, and placed [him] in segregation.  (*Id.*).  However, the record is well supported with evidence contrary to Plaintiff's rendition of the facts.  Specifically, the record proves Defendant Dodds and Plaintiff met in the shift office on the evening of April 9, 2009.  It was not until April 10, 2009, that Plaintiff was served with a disciplinary report for making a threat to harm, and it was not until April 11, 2009, that a hearing was held on the matter.  Furthermore, it is clear from the record that the following four disciplinary charges came from comments made during the April 11, 2009 hearing, and Plaintiff was not placed in segregation until April 12, 2009.  Plaintiff's facts are contrary to the clear evidence in the record and will not be considered for purposes of summary judgment.  *See Scott,* 550 U.S. at 380, *supra* note 5, at 11.  Thus, the Court finds Plaintiff has failed to allege sufficient facts for a § 1985(3) claim and there is no genuine issue for trial.

### 3.  Plaintiff failed to carry his burden of proving denial of medical care.

---

a conspiracy to deprive Plaintiff of equal protection of law.  In fact, at this meeting, Plaintiff received his request to have funds transferred to allow his court action to proceed.

"The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To meet the objective element required to demonstrate a denial of medical care in violation of the Eighth Amendment, a plaintiff first must demonstrate the existence of an "objectively serious medical need." *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id*. (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n. 9 (2002)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id.* (internal quotation marks and citation omitted).

There is no evidence presented by either party that Plaintiff exhibited any sign(s) of a serious medical need. Plaintiff himself does not enumerate any lasting injury nor significant or ongoing pain. The most egregious explanation of any harm was swelling to his face and the inability "to wash or comb his hair for weeks."[9] (Doc. 53 at 4, 7). Additionally, no affidavits from other inmates were produced that would evidence a serious injury occurred. Neither Plaintiff nor Defendants produced any sick call requests for treatment, which would signify a suffered injury and need for medical treatment. There are no statements in the disciplinary hearing reports that show Plaintiff had any injury on his head or eye area that would imply a serious injury or give credibility to being head butted by an officer.

---

[9] Plaintiff indicates that Officer Rudolph viewed the swelling on his face, but showed no concern. (Doc. 53 at 4). However, Rudolph was not named as a defendant in this action, nor has he produced any affidavit that would support Plaintiff's claim.

Furthermore, Plaintiff states he received delayed medical treatment after he was transferred to Staton. A "[d]elay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain." *Hill*, 40 F.3d at 1187 (internal citations and quotation marks omitted). To succeed in proving a violation, Plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. . . . Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay. *Hill*, 40 F.3d at 1188-89 (internal citations omitted) (footnotes omitted); *see also*, *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009). Plaintiff has produced no such evidence. He states he was prescribed treatment of a shampoo, selenium sulfide topical suspension lotion, for the sores on his head. (Doc. 53 at 7). This is confusing to the Court because Plaintiff's initial complaints do not list any actual physical injury occurring from the alleged head butts, *see* docs. 1, 21, 25; however, his final attempt to amend his complaint, which was denied by the Court, *see* docs. 52, 53, 63, denotes an injury of swelling, doc. 53 at 4, but then he states he received treatment for sores on his head, *id*. at 7. First, claiming no injury in the first complaints and then alleging injuries a year and a half later in a motion to amend is incongruous. Second, receiving a shampoo treatment for sores appears to be very questionable medical treatment for swelling due to a head butt? Furthermore, no medical records were produced to verify any of Plaintiff's alleged complaints or medical treatment. He did not submit any evidence of any "detrimental effect" any possible delay of treatment caused. *Hill*, 40 F.3d at 1188-89. Therefore, the Court finds that Plaintiff has failed to carry his burden of proving any Eighth Amendment violation of

denial or delay in medical care by Defendants, and there remains no genuine issue as to any material fact.

### 4. Plaintiff failed to prove his claim of false imprisonment.

Plaintiff pleads he was falsely imprisoned by Defendants. (Doc. 1 at 5). "Because an incarceration gives rise to a § 1983 claim only when the imprisonment is unconstitutional, the § 1983 cause of action is significantly limited in comparison to the common law tort of false imprisonment." *Mears v. Brett McCulley*, 881 F. Supp. 2d 1305, 1325 (N.D. Ala. 2012).

> A § 1983 claim of false imprisonment requires a showing of [facts satisfying the prima facie elements of both] common law false imprisonment and a due process violation under the Fourteenth Amendment. *See Cannon v. Macon County*, 1 F.3d 1558, 1562-63 (11th Cir. 1993), modified on other grounds, 15 F.3d 1022 (1994). The elements of common [1327] law false imprisonment are an intent to confine, an act resulting in confinement, and the victim's awareness of confinement. *See id*. at 1562 n. 3. The Fourteenth Amendment Due Process Clause includes the "right to be free from continued detention after it was or should have been known that the detainee was entitled to release." *Id*. at 1563; *West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir. 2007) (per curiam). To establish a due process violation, [the plaintiff] must prove that [the defendant] acted with deliberate indifference. *See Tillman*, 496 F.3d at 1327. This means that [the defendant] had subjective knowledge of a risk of serious harm and disregarded that risk by actions beyond mere negligence. *See id*.

*Mears v. Brett McCulley*, 881 F. Supp. 2d 1305, 1326-1327 (N.D. Ala. 2012) (quoting *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009)(*per curiam*)). Plaintiff fails to state, much less, satisfy the prima facie elements of false imprisonment. Plaintiff was incarcerated at Camden for a 2004 conviction of manslaughter. (Doc. 1 at 6). The Court assumes that because Plaintiff's conviction is valid, the claim must suppose some other act of holding by Defendants was wrongly administered. The Court can only speculate that Plaintiff alleges he was falsely imprisoned when placed in segregation on April 12, 2009. (46-2 at 18). However, if this is Plaintiff's claim, it also fails.

After Plaintiff's April 11, 2009, disciplinary hearing for making threats, he was informed by Defendant Sgt. Dodds that further charges would be brought against him for the false statements he made during the hearing. On April 12, 2009, Plaintiff was notified by letter that he was being placed in detention pending an investigation. (Doc. 46-2 at 18). Given that Plaintiff had just been found guilty of making threats to harm an officer or inmate to get a transfer, it is reasonable and justifiable that Defendants would feel the need to segregate Plaintiff in order to protect others. Subsequently, Plaintiff was charged with other infractions and was afforded due process throughout the hearings.[10]

The Court finds no evidence of any false imprisonment of Plaintiff. He was legally imprisoned at Camden, Staton, Fountain, and now at Mobile County Work Center. Every disciplinary charge, hearing, and subsequent transfer was implemented pursuant to appropriate Alabama Department of Correction guidelines. Therefore, Plaintiff has failed to state a claim for false imprisonment.

**5. Plaintiff failed to prove he was denied due process in disciplinary hearings.**

Due process in a prison setting requires "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in [the prisoner's] defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974). Plaintiff was served with a disciplinary report for each charge brought against him at least 24 hours prior to any hearing, given the opportunity

---

[10] The letter that was served on Plaintiff informing him of the intent to place him in segregation did not list the infractions for which Plaintiff was being investigated. (Doc. 46-2 at 18). However, this does not make a case for unconstitutional actions on the part of Defendants. Plaintiff had been verbally informed by Defendant Dodds of the charges that would be filed against him. Furthermore, placing Plaintiff in segregation for a short period served a penological purpose of the need to protect others at Camden, which is a small very low security facility.

to lists witnesses to be called at the hearing, and allowed to testify at the hearing. (*See* Doc. 46-2 at 19, 23, 28, 32, 99). A hearing was held for each charge, pursuant to the due process requirements of Administrative Regulation Number 403. (Doc. 46-2 at 36- 63). Plaintiff was found guilty of each charge, informed of the hearing decision and punishment, signed a copy of the decision, all proper paperwork was completed, and each hearing was approved by the Warden. (*Id*. at 5-15, 19-35). It is not a constitutional violation that the witnesses Plaintiff listed for his April 11, 2009 hearing were not called because they were not in fact witnesses to the charge. (Doc. 46-2 at 13). Moreover, not being allowed to call Officer Thompson as a witness at the April 11, 2009 hearing is also not a due process violation. [11] Plaintiff had the opportunity to list witnesses, and did list three, at the time he was served with the disciplinary report; therefore, the Court cannot see that Plaintiff changing his mind is a due process violation. Defendants complied with every element needed to provide Plaintiff with due process, and the Court finds no constitutional violation. *See Wolff*, 418 U.S. at 563-67.

### 6. Plaintiff failed to prove any injury from alleged interference with mail.

Plaintiff alleges that his legal mail was tampered with at Camden from July 2008 through November of 2008, and again at Staton by Defendants Hitson and Baker, and he seeks redress under § 1983 for denial of access to the courts. (Doc. 54 at 5, 9). To state a valid 42 U.S.C.S. § 1983 claim, Plaintiff must allege that a defendant's deliberate and malicious interference actually impeded his access to the court or prejudiced an existing action. *Lewis v. Casey*, 518 U.S. 343,

---

[11] The Administrative Regulations state that "[a]t the time of service of charges on an inmate, the Serving Officer will advise the inmate of his/her right to call witnesses whose testimony will be relevant. . . . The Hearing Officer will determine if the witnesses' testimony could possibly be relevant. . . . Normally no more than three (3) witnesses with relevant testimony are called." (Doc. 46-2 at 38-39).

349-51 (1996). Therefore, in order to survive a motion to dismiss Plaintiff must allege actual

injury, such as the dismissal of an otherwise meritorious legal claim. *Id.*

Plaintiff states he received mail from the courts that had been opened prior to his receipt

until December 2008. (Doc. 54 at 5). These conclusory allegations of mail opening fail to allege

any actual injury or harm to Plaintiff. These statements alone are insufficient to establish a

constitutional violation that he was denied access to the court.[12] Moreover, Plaintiff has failed to

demonstrate that Defendants' actions resulted from any improper motivation to deliberately

interfere with an ongoing legal action or his ability to access the court.

Plaintiff also claims that while at Staton, on April 22, 2010, his legal mail was delayed

from being sent by Defendant Ms. Hitson for 18 days and that Defendant Mr. Baker withheld

correspondence that should have been posted on February 2, 2011. (Doc. 21 at 5). Again,

Plaintiff fails to allege that Defendants deliberately and maliciously interfered with his mail and

actually impeded his access to the court or prejudiced an existing action. *Lewis,* 518 U.S. at 349-

51. Even if Defendant Hitson did not mail his correspondence in a timely manner, it was mailed

and received by the intended recipient.[13] (Doc. 21 at 5). Additionally, there is no actual injury

---

[12] Isolated incidents of mail opening are insufficient to establish a constitutional violation. *See Davis v. Goord*, 320 F.3d 346, 351 (2nd Cir. 2003) (allegation of two incidents of mail interference did not warrant relief where plaintiff failed to allege invidious intent or actual harm); *Berger v. White*, 12 Fed. Appx. 768, 771 (10th Cir. 2001) (without any evidence of improper motive or resulting interference with plaintiff's right to counsel or to access to the courts, incidents of mail opening do not support a civil rights claim); *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (isolated incident of inadvertent opening of inmate's incoming legal mail, without evidence of improper motive or resulting interference with inmate's right to counsel or access to courts, does not rise to level of constitutional violation); *Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989) (inadvertent opening of an inmate's legal mail, while not to be condoned, constitutes mere negligence and does not rise to the level of a constitutional rights violation cognizable under 42 U.S.C. § 1983).

[13] Defendant Hitson has not been served with this action due to Plaintiff's inability to locate

alleged that any harm, such as the dismissal of an otherwise meritorious legal claim, was caused

by the possible withholding of a letter by Defendant Baker. *Lewis,* 518 U.S. at 349-51.

**7. Plaintiff failed to prove his claim of lack of access to library while at Fountain Correctional Facility.**

To the extent Plaintiff complains he was denied access to the courts because he was not

afforded adequate access to a law library and/or law books (doc. 25-1 at 5), he is entitled to no

relief.

> Inmates are not, however, guaranteed "the wherewithal to transform themselves
> into litigating engines capable of filing everything from shareholder derivative
> actions to slip-and-fall claims," but are only assured "[t]he tools . . . need[ed] in
> order to attack their sentences, directly or collaterally, and in order to
> challenge the conditions of their confinement. Impairment of any other litigating
> capacity is simply one of the incidental (and perfectly constitutional)
> consequences of conviction and incarceration." *Lewis v. Casey*, 518 U.S. 343,
> 354-55, 116 S.Ct. 2174, 2181-82, 135 L.Ed.2d 606 (1996); *see also Wilson [v.
> Blankenship]*, 163 F.3d [1284], 1290 [(11th Cir. 1998)]. "The limited types of
> legal claims protected by the access-to-courts right [are] nonfrivolous appeals
> from a conviction, habeas petitions, or civil rights suits." *Al-Amin v. Smith*, 511
> F.3d 1317, 1332 (11th Cir.), *cert. denied* 555 U.S. 820, 129 S. Ct. 104, 172 L. Ed.
> 2d 33 (2008).

*Owuor v. Welch*, No. 2:09-cv-1098-CSC (WO), 2012 U.S. Dist. LEXIS 141242, 20-223,

2012 WL 4513618 (M.D. Ala. Oct. 1, 2012). In order to successfully plead a § 1983 claim,

Plaintiff must demonstrate that an actual deficiency in the library or legal assistance program

impeded his efforts to pursue his claims in the courts. *Lewis*, 518 U.S. at 351 (examples of

actual impediments to claim are when a prisoner's complaint is dismissed for a technical reason

of which the prisoner was unaware due to a deficiency in the prison's legal assistance facilities or

when inadequacies in the law library prevented a prisoner from filing a complaint). A prisoner

---

her address. (Docs. 33, 35, 40). Given that the Court has determine there is no viable claim
against Defendant Hitson, there is no need to assist Plaintiff in finding an address for service of
process. (*See* Doc. 40).

"cannot merely allege a denial of access to a law library or adequate attorney," *Wilson v. Blankenship*, 163 F.3d 1284, 1291 (11th Cir. 1998) (quotation omitted), because a prisoner does not have a "free-standing right to a law library or legal assistance," *Lewis*, 518 U.S. at 351. Rather, a prisoner must establish that the means of access provided by officials or officials' actions frustrated or impeded his efforts to pursue a nonfrivolous appeal of his conviction, a habeas petition, or civil rights action.

Plaintiff presents no evidence that his lack of access to the law library in any way improperly impeded or adversely affected his efforts to pursue legal claims, such that he experienced adverse consequences or an actual injury from the alleged deprivation. *Lewis*, 518 U.S. at 349. Plaintiff contends that he has filed a case in the Middle District of Alabama as well as this action before the Court. (Doc. 1 at 3). Furthermore, Plaintiff was not hindered from filing pleadings with this Court during the time he was incarcerated at Fountain; in fact, he filled 16 pleadings including motions to amend, amended complaints, a motion for default judgment, an affidavit, a brief, and a response to the motion for summary judgment. (*See* Docs. 14, 16, 18, 21, 22, 26, 29, 34, 37, 39, 39, 41, 50, 52, 53, 54, and 56). Moreover, no negative action has been taken by this Court against Plaintiff, nor does he allege any adverse impact had in the action filed in the Middle District due to an improper law library or his lack of access to the law library. Without any alleged harm suffered, Plaintiff fails to prove the needed elements of his claim.

## V.  CONCLUSION

Based on the foregoing, it is recommended that the motion for summary judgment of Defendants, Robert Nielsen, James P. Dodds, Ms. Hitson, J. Baker be granted and that Plaintiff's action against said Defendants be dismissed with prejudice.

### <u>Notice of Right to File Objections</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this 29th day of August, 2013.

s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE